## HENRY READ *v.* RAY JOHNSON.

A deed of assignment made by a debtor for the payment of certain debts, and for the payment of his debts generally, and partial payment made by the assignee to a creditor, is not sufficient evidence of a new promise to avoid the statute of limitations.

THE action in this case was assumpsit, the plea the statute of limitations, and the replication a new promise. The facts are fully stated in the opinion delivered by

DURFEE, C. J. — The plaintiff in this action declares, on a note dated 17th of March, 1825, to the plaintiff for the sum of seventy-five dollars, on demand. To this demand the defendant plead the statute of limitations, and the plaintiff replies a new promise.

The writ is dated October, 1836. And to take the note out of the statute, the plaintiff relies on the facts briefly stated by his counsel in the commencement of the opening argument, which we here repeat. 1. Defendant's deed of assignment, dated February 9, 1826, conveying his property to be applied to the payment of certain of his debts, and second, to the payment of his debts generally. 2. The testimony of Jenks, the assignee, that the payment out of the proceeds of the property assigned was made in a reasonable time after the execution of the deed, and that before making payment, the note was shown to defendant, who said that this was one of the debts upon which payment was to be made. 3. The letter of Johnson to Joseph Reed, stating that Joseph Reed

and his other creditors had received the benefit of defendant's property, &c. This letter passes by consent, as if adressed to the plaintiff.

Since the recent decisions have given a new aspect to the statute of limitations, nothing but an express promise, or that from which a new promise can be clearly inferred, will take a demand out of its provisions. And in coming to a determination, in a case like this, courts are now governed by what appears to be the manifest intent and meaning of the party, rather than by a meaning artificially forced from his words and acts, or which, by a constrained construction, may be supposed to be implied therein. With this view of the case, let us inquire whether the evidence in this case clearly and naturally establishes a new promise within the six years?

The partial payment made by the assignee is the main fact relied on in support of a new promise. Payment in part is not of itself a new promise, but a fact from which, in general, a new promise is *prima facie* inferred. But such payment may be made under circumstances that shall repel the inference; as, when made by a stranger, or by one not acting under the control of the debtor, or by the debtor himself, declaring at the time it is in full of the demand, or by payee himself, into whose hands money has come which he is authorized to apply. Thus in the case of *Gordon* v. *Forster* (3 B. & Ad. 507,) referred to in the appendix to the fifth American edition of Starkie, (2d vol. 1067,) it is said, that " The giving a bill in part payment of a debt, more than six years before action brought, but which bill has been paid within six years, does not take the case out of the statute of limitations; for the reason why a payment takes a case out of the statute is, that it is evidence of a fresh promise, and the promise must be considered to have been made when the bill was given, and not when it was paid."

Reed *v.* Johnson.

Does the payment made by the assignee in this case clearly warrant the inference of a new promise made by the defendant at the time of such payment? On the affirmative side of this question, it is said that the assignee was the agent of the defendant for making this payment, and that his act in so doing was the defendant's. If this be so, it settles the question in favor of the plaintiff. The essential question then is, was the assignee, in making this payment, defendant's agent, acting for him and under his orders ?

Agent and principal are correlative terms, and in the proper sense of the word, there can be no agent without a principal, or one in the fulfilment of whose orders, express or implied, the agent acts ; and who has the right to control such act, rather than the person for whose benefit it is done. At any rate, to such an one only as does an act at the instance of another, and not of his own will and on his own responsibility, will the maxim *qui facit per alium,* &c. apply. Was, then, the assignee, in making this payment, acting under the orders of the defendant or acting from his own will, or acting at the instance, and under the control, of some third person ?

A person whom I employ to make contracts or payments for me, and in whose mere possession I place funds for that purpose, differs very materially from one to whom all my property is conveyed or assigned in trust, to be applied in a manner prescribed in the assignment to the payment of my debts, and who can be compelled by my creditors so to apply it. In such case, if agent he be, he is as much the creditor's agent as mine. The law of principal and agent applies in the first case to its legitimate objects. In the second case, though in obtaining the possession of the property or funds, he use my name, and the same case, therefore, to that extent be applicable, yet, after having obtained such possession, he is no longer my agent, but the common trustee of me and all

such creditors as choose in any way to signify their assent to the arrangement. He then acts under a contract with them, or as many of them as choose to look to him ; he is made a trustee by force of it, and may be called into a court of equity, not by the debtor only, but by any or all the creditors, and so be held to answer for any mismanagement of the property in his hands. In the application, therefore, of the funds in his hands, he is directly and immediately responsible to the creditors, and not to the assignee as his agent. He is truly acting from his own will and on his own responsibility in the performance of a contract. He has no principal to control him. Any other contractor is as much an agent as he is. His assignor has made him the owner of certain property upon condition that he apply it in a certain way. The assignee thereupon accepts the property, and undertakes to perform the condition. At the moment the assignment is accepted, the control of the assignor over the property, and his responsibility for its use, cease, and those of his assignee commence, and continue till all his stipulations are performed. He examines claims, he makes payments ; but whatever he does is done on his own responsibility, in discharge of his own liabilities to all parties interested. Where is the agent ? Where is the principal ? We see, therefore, in the payment made by the assignee, a payment made by him on his own responsibility, as the common trustee of the parties, and not as defendant's agent. We cannot, therefore, clearly infer from such a payment, that the defendant waived the statute of limitations and made a new promise.

There is a further ground, — that the defendant, after the sale of the property and before payment, designated this note to the assignee as one provided for by the assignment. It does not appear, otherwise, when this designation was made ;

but at whatever time it may have been made, it certainly can pass for no more than defendant's declaration of the intent and meaning of the assignment, or, in other words, it is but declarative of what was the intention of the assignor at the date of the assignment. It certainly would be going too far, and against all the other proceedings of the insolvent, to say that, from such an explanation, a new promise to pay this particular debt might be clearly inferred.

Neither is the letter to Reed, taken in connection with all to which it relates, sufficient clearly to establish a new promise. There is nothing in it which manifests an intent to pay, or from which such an intent can be clearly inferred. On the contrary, it is an effort to justify or excuse the non-payment of the balance, unaccompanied with any intimation of an inclination or intent to pay in future.

For the purpose of sustaining the position that the assignee in this case made the payment as the agent of defendant, a number of authorities have been cited, which will now be briefly considered in discussing the principles which they are supposed to have established.

The general principle that the agent, acting in pursuance of authority from his principal, expressed or implied, may, by application of his principal's funds to the partial payment of a demand, take it out of the statute, is not questioned; and this disposes of all the authorities exclusively to that point. But other authorities have been cited for the purpose of showing that one of two or more joint promisors is agent for the rest, and that it is on the ground of agency, that a payment made by one becomes the admission of debt by all. This point, it is presumed, is sought to be established with a particular reference to the case of *Jackson* v. *Fairbanks*, (2 H. Bl. 340.) But we apprehend that the principle on which such admission binds, is not that of agency, but

that of the common liability of the promisors.  They are,
as to promisee, a one and indivisible party.  In a joint note,
they must be all sued ; judgment goes against all ; execution
against all as one, and the payment of the debt out of the
property of any one of them, is, as to payee, a payment by
the whole party.   And on this principle arises an equity
among the promisors themselves, for all are answerable over
to each for any excess of payment beyond his share.   It is,
then, a common liability, and not an agency (though it may
be so misnamed,) that makes a partial payment by one a
renewal of a demand against all.   In the case of *Jackson* v.
*Fairbanks* (the authority of which is somewhat questionable)
the payment was made out of the property of one of the
promisors, by force of a process of bankruptcy, in which the
assignee was the mere instrument of the law, — as much so
as the sheriff who pays over a debt collected on an execution.
The payment was in fact made by assignee, neither as agent
of the co-promisor, or of the bankrupt, but simply as by one
whom the law appointed to discharge that duty.   He is some-
times called the representativee, as one standing in the place
of the bankrupt, but he can never, with strict propriety, be
called his agent; for he does not claim under the bankrupt,
but adversely to him, by mere operation of law.   The bank-
rupt often becomes a mere agent or instrument in the hands
of the assignee ; but never does the assignee look to the
bankrupt as his principal.   The bankrupt, from the bank-
ruptcy — certainly from the assignment — has no property,
and when certificated, he has no debts on which he is liable.
He has nothing which can be the subject of an agency.   For
certain purposes, as for collecting and distributing the pro-
perty, the law substitutes the assignee for the bankrupt himself,
and, for all those purposes, the bankrupt ceases to have a
legal existence.   To the assignee, thus acting in the place of

Reed *v.* Johnson.

another, principles analogous to those of agency sometimes become applicable, and it is then that the assignee has been, with too little precision (perhaps often) misnamed an agent. Thus in the case of *Chandler* v. *Windship*, (6 Mass. 310,) the counsel for the plaintiff so names him, but Chief Justice Parsons is careful to avoid so designating him, and bases his decision on the ground that the assignee was the only person on whom the demand could be made, and who could at the time oppose the claim.

Whether, had this been a joint note, as in the case of *Jackson* v. *Fairbanks*, it would have been renewed by this partial payment, it is not now necessary to decide; but it may be remarked, that proceedings under a bankrupt law are as direct on the property of the bankrupt as an execution; but in case of these voluntary assignments, the payment is the result of a collateral and independent contract or arrangement, to which the creditors themselves become parties so far as to recognize the assignee as their trustee, whenever they choose to accept a payment known by them to be made in pursuance of the trust. It may be further remarked that England has her bankrupt law; that the power to pass such a law is not, it seems, in the legislature of this state; all that can supply this defect in its legislative power, are its insolvent system and the statute of limitations. Whatever is taken from these is absolutely lost to the state, and of course to its judicial jurisdiction; but it is believed never to have been the maxim of any court of common law, that, in the construction of the laws, it should incline to contract its own jurisdiction rather than enlarge it. The disposition to enlarge, rather than to contract, within the meaning of the legal maxim, is necessary, to the end that there may be no void left within the whole sphere of judicial and legislative action.

Judgment for the defendant.